*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF FREDERICK JEWEL TIFFANY.

---

SANDRA A. WHEELER,

      Appellant,

v

ROSEMARY TIFFANY, Personal Representative of the ESTATE OF FREDERICK JEWEL TIFFANY,

      Appellee.

UNPUBLISHED
May 26, 2022

No. 356358
Ingham Probate Court
LC No. 19-001584-DE

---

Before: MURRAY, P.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

Appellant, Sandra A. Wheeler, appeals by delayed leave granted[1] the probate court's order reforming a deed to terminate the real property interest that passed to the estate of decedent, Frederick Jewel Tiffany, and allowing RoseMary Tiffany to transfer that interest to herself. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case involves a probate dispute between RoseMary Tiffany and Sandra A. Wheeler, two of Frederick Jewel Tiffany's seven children, regarding RoseMary's ownership interest in real property following Frederick's death on August 1, 2019. The parties do not dispute the relevant facts.

Frederick and his wife, JoAnn, sold the property at issue to RoseMary for $50,000, and the sale was memorialized in a deed recorded in 2000. RoseMary thereafter financed the construction

---

[1] *In re Tiffany Estate*, unpublished order of the Court of Appeals, entered July 16, 2021 (Docket No. 356358).

of a two-unit condominium on the land, and Frederick moved in to one unit so RoseMary could take care of him because of his age and infirmities. According to RoseMary, in 2008, she and Frederick were each being charged a garbage collection fee by the City of Mason. However, she became aware that only one collection fee would have to be paid if they were both listed on the deed, which would be helpful since Frederick was on a limited income. As a result, in November, 2008, RoseMary executed a quitclaim deed conveying her interest in the subject property to herself and Frederick for $1.00. RoseMary drafted the deed without seeking counsel and mistakenly believed that, if either she or Frederick died, the property would fully pass to the surviving tenant. Frederick's will provided that if his wife predeceased him—which she did—the personal representative of his estate should sell any residual property that he owned and divide the cash proceeds equally among his surviving children.

After Frederick's death in 2019, RoseMary attempted to refinance the property, but she discovered from the title company that she only held one-half interest in the property, with Frederick's estate owning the other one-half share. Because RoseMary had not included any language in the deed providing that the property was a joint tenancy with full rights of survivorship, the property instead became a tenancy in common where each tenant owned an equal share of the property that did not pass to the other tenant upon death. RoseMary contacted her six siblings about the mistake in the deed, and stated that all siblings but Wheeler agreed that RoseMary was the sole owner of the property.

During the subsequent probate proceedings, the court appointed RoseMary as the personal representative of Frederick's estate, over Wheeler's objection. In June 2020, RoseMary petitioned the court to allow her, as personal representative, to transfer the estate's one-half property share to herself on the basis of error in preparing the deed. Wheeler opposed the petition, arguing that the deed created a tenancy in common, that Frederick's interest in the property passed to his estate upon his death, and that pursuant to Frederick's will, she was entitled to her equal share of the proceeds from the property as a beneficiary of Frederick's estate. The other five siblings consented to RoseMary's petition for transfer of the property, and submitted affidavits in support of the petition.

After hearing arguments, and after the parties agreed that the facts were not in dispute, the probate court ordered reformation of the deed, concluding that there was no evidence that the parties intended for Frederick to have any real interest in the property. The court's order provided that RoseMary, in her role as personal representative, could correct the 2008 quitclaim deed to add the language "with Full Rights of Survivorship" and could record a new deed transferring any property interest that Frederick may have had to herself. This appeal followed.

## II. ANALYSIS

Wheeler argues that the probate court erred by concluding that RoseMary had met her burden of establishing a mutual mistake in order to warrant reformation of the deed.

Whether equitable relief is proper under the facts found by the trial court is a question of law that we review de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). Michigan law recognizes multiple types of concurrent ownership, including tenancies in common and joint tenancies. *Wengel v Wengel*, 270 Mich App 86, 93; 714 NW2d 371 (2006).

Under a joint tenancy, each tenant shares in possession of the property and has a right of survivorship, meaning that if one tenant dies, the deceased tenant's interest in the property passes directly to the surviving tenant. *Albro v Allen*, 434 Mich 271, 274-275; 454 NW2d 85 (1990). While the right of survivorship can be destroyed by the act of a cotenant in an ordinary joint tenancy, the right is indestructible when the tenants use "express words of survivorship in the granting instrument," such as the phrase, "with full rights of survivorship." *Id*. at 275-276. On the other hand, a tenancy in common includes no right of survivorship because each tenant possesses "a separate and distinct title to an undivided share of the whole" of the property. See *Kay Investment Co, LLC v Brody Realty No 1, LLC*, 273 Mich App 432, 441; 731 NW2d 777 (2006) (quotation marks and citation omitted). Pursuant to MCL 554.44, a grant or devise of real property made to two or more people is presumed to establish a tenancy in common:

> All grants and devises of lands, made to 2 or more persons . . . shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy. [MCL 554.44.]

The parties agree that the language of the deed prepared by RoseMary that conveyed the property to herself and Frederick created a tenancy in common. The question is whether the probate court erred in finding that RoseMary satisfied her burden of establishing a mutual mistake of law.

"Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of fraud, mistake, accident, or surprise." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-372; 761 NW2d 353 (2008), citing *Potter v Chamberlin*, 344 Mich 399, 407; 73 NW2d 844 (1955), and *Scott v Grow*, 301 Mich 226, 238-239; 3 NW2d 254 (1942). "The general theory of reformation is that where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on the one side and fraud on the other, the instrument does not express the true intent of the parties, equity will reform the instrument so as to express what was actually intended." *Ross v Damm*, 271 Mich 474, 480-481; 260 NW 750 (1935). Whether a mutual mistake of law justifies reformation of the deed depends on the type of mistake at issue. See *Johnson*, 281 Mich App at 379. Mistakes of law are classified as either "mistakes regarding the legal effect of the contract actually made [or] mistakes in reducing the instrument to writing." *Id*. at 379-380.

> In the former, the contract actually entered into will seldom, if ever, be relieved against unless there are other equitable legal features calling for the interposition of the court; but in the second class, where the mistake is not in the contract itself, but terms are used in or omitted from the instrument which give it a legal effect not intended by the parties, and different from the contract actually made, equity will always grant relief unless barred on some other ground, by correcting the mistake so as to produce a conformity of the instrument to the agreement. [*Schmalzriedt v Titsworth*, 305 Mich 109, 119-120; 9 NW2d 24 (1943) (quotation marks and citations omitted).]

A unilateral mistake may also support the reformation of a deed, but only when the mistake was induced by fraud or the other party had knowledge of the mistake and concealed that knowledge. *Johnson*, 281 Mich App at 380.

A mutual mistake is one "shared by and common to both parties[.]" *Goldman v Century Ins Co*, 354 Mich 528, 533; 93 NW2d 240 (1958). The party seeking reformation has the burden to prove a mutual mistake by clear and convincing evidence. *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006).[2] Evidence is clear and convincing if it

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).]

On these agreed upon facts, we agree with the probate court that RoseMary established by clear and convincing evidence that she and Frederick were mutually mistaken about the legal effect of their deed, or wrote the deed in that form by accident. The record[3] is undisputed that RoseMary purchased the property from Frederick and his wife years prior to the 2009 deed, and the only reason offered as a basis for placing Frederick on the deed in 2009 was to alleviate a duplicative cost that Frederick could not afford. There was also no dispute between the parties that this was the reason for the 2009 deed, and it was not to transfer a common interest in the land with Frederick that would be passed onto his estate upon death. The undisputed facts also permitted the inference that the siblings consented to a revision of the deed because they believed that RoseMary and Frederick mistakenly created a tenancy in common. RoseMary presented clear and convincing evidence of a mutual mistake of law, one in which the omission of survivorship language gave the deed "a legal effect not intended by the parties," *Schmalzriedt*, 305 Mich at 120, and met her burden to establish that the mistake was "shared by and common to" Frederick. See *Goldman*, 354 Mich at 533.

*Scott v Grow*, 301 Mich 226; 3 NW2d 254 (1942), supports our conclusion. In *Scott*, all parties to a deed intended to create a joint tenancy but conveyed the property to the grantees as "tenants by entireties and not as joint tenants" creating an ambiguity because the grantees were not married and could not hold property by the entireties. *Id*. at 234. The *Scott* Court held that these facts supported an equitable claim for reformation of the deed:

> Where a written instrument fails to express the intention of the parties because of a mutual mistake as to the interpretation or legal effect of the words of the writing, though there is no misapprehension as to what words have been used, reformation is allowed. It is not necessary, moreover, in order to establish a mistake which may

---

[2] Our courts have also used the language of a "clear and satisfactory evidence" standard to describe the burden of proof necessary to establish a mistake. See, e.g., *Goldman*, 354 Mich at 533; *Crane v Smith*, 243 Mich 447, 450; 220 NW 750 (1928).

[3] We recognize that despite having witnesses available to testify in support of the petition, the trial court indicated no need for the testimony since both sides acknowledged the facts alleged in the petition were undisputed. Thus, the parties in essence stipulated to an undisputed set of facts, which the court was free to accept and rely upon in deciding the petition. See, e.g., *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 246; 533 NW2d 15 (1995).

be reformed that it should be shown that particular words were misunderstood. 'It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention.' 5 Williston on Contracts (Rev Ed), p 4423, § 1585, quoting from *Leitensdorfer v Delphy*, 15 Mo 160, 167 (55 Am Dec 137). [*Id*, at 237.]

So too here, as it was undisputed that the 2009 deed failed to express the intention of RoseMary and Franklin because of a mutual mistake or accident as to the legal effect of the words used in the deed, and the deed as drafted was insufficient to effectuate their intention and objective.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Michael J. Kelly